IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

MARTIN L. BROWN,                    *

    Appellant,                      *

vs.                                 *
                                 CASE NO. 3:11-CV-25 (CDL)
ERNEST V. HARRIS, Trustee,          *

    Appellee.                       *

IN RE: BRADFORD GEORGE BROWN,       *

    Debtor.                         *

O R D E R

Appellant Martin L. Brown appeals the bankruptcy court's approval of the Chapter 7 Trustee's Motion to Compromise Controversy resolving Adversary Proceeding No. 07-3007.[1] The adversary proceeding was filed by the Trustee to determine the amount of the Internal Revenue Service's ("IRS") claim in the Chapter 7 bankruptcy case of Appellant's brother, Bradford G. Brown ("Debtor"). For the following reasons, the Court affirms the bankruptcy court's approval of the compromise.[2]

---

[1] Debtor Bradford Brown did not appeal the bankruptcy court's order. He is not a party to this appeal. Appellant Martin L. Brown is not a debtor in the bankruptcy case, but claims standing based on an agreement that he has an interest in all of his brother's assets. The Appellee concedes that Appellant had standing to oppose the motion to compromise controversy because a successful result could conceivably result in a distribution to the Debtor.

[2] Also pending before the Court is Appellant's Motion to Supplement the Record (ECF No. 9). Appellant seeks to supplement the appellate

STANDARD OF REVIEW

The district court, in reviewing a decision of a bankruptcy court, functions as an appellate court. *See Williams v. EMC Mortg. Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam); *see also Reider v. Fed. Deposit Ins. Corp. (In re Reider)*, 31 F.3d 1102, 1104 (11th Cir. 1994). On an appeal from a bankruptcy court, district courts "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The Court reviews the bankruptcy court's approval of a settlement agreement under an abuse of discretion standard. *In re Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009). Under an abuse of discretion standard, the Court will affirm the approval of the settlement agreement unless it finds that the bankruptcy court "has made a clear error of judgment, or has applied the wrong legal standard." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010).

FACTUAL BACKGROUND

Debtor was convicted of criminal tax evasion for the years 1994 and 1995. As part of his sentence, this Court entered an award of restitution against him for over $3 million. In

---

record with the following documents: ECF Nos. 743, 749, 776, 780, 781, 784, 790, and 808 in Bankruptcy Case No. 05-30144-JPS. The Court has reviewed those documents. Because they do not change the outcome of this appeal, Appellant's Motion to Supplement the Record (ECF No. 9) is denied as moot.

January 2005, Debtor filed a Chapter 11 bankruptcy case, which was subsequently converted to Chapter 7. The IRS filed a proof of claim in that case for $3,660,954.66 in unpaid taxes, penalties, and interest for the tax years 1994 through 2003. In February 2007, the Chapter 7 Trustee filed Adversary Proceeding No. 07-3007 to determine the amount of the IRS's claim and the extent and validity of its secured claim. After over three years of investigation and negotiation, the Trustee and the IRS reached a settlement to resolve the controversy, and the Trustee filed a motion to compromise the controversy in October 2010. Under the compromise, the IRS's original $3,660,954.66 claim was reduced by $1,244,865.00 to $2,416,088.00, of which $454,155.00 was treated as an allowed secured claim and $1,961,933.00 was treated as an allowed unsecured claim.[3]

The United States Bankruptcy Court for the Middle District of Georgia held a hearing on the motion to compromise the controversy on December 7, 2010. Appellant attended the hearing and objected to the settlement for two reasons.[4] First, despite

---

[3] Debtor's tax liabilities for the years 1998 through 2001 were treated as secured claims under the compromise due to the recording of tax liens against Debtor's real property which was sold by the Trustee. Appellee Br. Ex. A, Mot. to Compromise Controversy ¶ 3, ECF No. 8-1.

[4] Debtor was not present at the hearing because he was incarcerated. Notice of Appeal from Bankruptcy Ct. Attach. 4, Hearing Tr. 136:3-4, 195:25-196:13, ECF No. 1-4. The bankruptcy court noted that Debtor's objections to the settlement were mirrored by Appellant's objections presented at the hearing. *Id.* at 136:4-6, 196:13-14.

3

Debtor's criminal conviction for tax evasion, Appellant continued to maintain that Debtor owed no taxes for the years 1994 and 1995. Notice of Appeal from Bankruptcy Ct. Attach. 4, Hearing Tr. 53:24-54:8, ECF No. 1-4 [hereinafter Hearing Tr.]. Second, Appellant maintained that the IRS levied $10.6 million in insurance payments that were intended for Debtor, and that any tax liability was paid pursuant to those levies. *Id.* at 54:9-56:9. Appellant based his latter contention on IRS records that he obtained pursuant to a Freedom of Information Act ("FOIA") request. At the hearing, however, IRS Agent Tammy Willingham testified that the IRS documents that Appellant received pursuant to his FOIA request "just reflect payments that Dr. [Bradford] Brown or Brown Medical Center received during 1993 and 1994. In no way[] do[] [the documents] relate to any type of levy . . . that the IRS received." *Id.* at 93:7-10. Appellant produced no other evidence to substantiate his contention that the IRS levied funds intended for Debtor.

At the end of the hearing, the bankruptcy court determined that the proposed settlement fell "in the . . . range of reasonableness," and approved the settlement. *Id.* at 202:3-7.

## DISCUSSION

Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). When a

4

bankruptcy court decides whether to approve a proposed settlement, the court must consider: "(a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990); *accord In re Chira*, 567 F.3d at 1312. "A bankruptcy court is not obligated to actually rule on the merits of the various claims 'only the *probability* of succeeding on those claims.'"[5] *In re Van Diepen, P.A.*, 236 F. App'x 498, 503 (11th Cir. 2007) (quoting *In re Justice Oaks*, 898 F.2d at 1549). "Courts consider these factors to determine the fairness, reasonableness[,] and adequacy of a proposed settlement agreement." *In re Chira*, 567 F.3d at 1312-13 (internal quotation marks omitted).

---

[5] "The [*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968)] rule does not require the bankruptcy judge to hold a full evidentiary hearing or even a 'mini-trial' before a compromise can be approved." Collier on Bankruptcy ¶ 9019.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). "Otherwise, there would be no point in compromising; the parties might as well go ahead and try the case." *Id.* "Instead, the obligation of the court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* (internal quotation marks omitted).

5

Appellant frames the issues on appeal as: (1) whether "[t]he true tax liability of Debtor for tax years 1994 and 1995 was zero;" and (2) whether "[t]he amount of money extracted from Debtor for years 1993 forward via levy extraction was approximately $10.6 million." Appellant Br. 1, ECF No. 6. But as explained above, the bankruptcy court was not required to decide those factual issues to approve the motion to compromise. So the issue for this Court to decide on appeal is whether the bankruptcy court abused its discretion in approving the compromise. For the following reasons, the Court finds that under the *Justice Oaks* factors the bankruptcy court did not abuse its discretion in approving the compromise.

First, the bankruptcy court found that the possibility of further reducing Debtor's tax liability at trial was minimal. Hearing Tr. 201:7-10. The bankruptcy court's finding was supported by the Trustee's testimony that if the adversary proceeding went to trial, he would be unable to prove some of the deductions that the IRS had allowed pursuant to the compromise, thereby *increasing* Debtor's tax liability. *Id.* at 126:7-128:19. And despite numerous opportunities to produce evidence of additional deductions or tax payments, Debtor and Appellant produced none.[6] *Id.* at 127:24-128:2. Therefore, the

---

[6] Even the proposed compromise provided that "[i]f the debtor challenges the compromise with credible, admissible evidence that he

Court agrees with the bankruptcy court's conclusion that it is unlikely Debtor's tax liability would be further reduced at trial. Accordingly, the first *Justice Oaks* factor supports the bankruptcy court's decision to approve the compromise agreement.

Second, the bankruptcy court found that a trial in the adversary proceeding would be a "Herculean task" that would take "an enormous amount of time" and "would cost a fortune."[7] *Id.* at 199:5, 199:17, 201:18. The bankruptcy court's finding was supported by evidence that a trial in the adversary proceeding would involve numerous subpoenaed witnesses, several days in court, and a large volume of documents canvassing the ten years of disputed taxes.[8] *Id.* at 126:12-128:11, 198:18-199:10. And any trial would also be hampered by Debtor's refusal to

---

is entitled to deductions beyond those that constitute the compromised amounts . . . , the United States will adjust the corrected taxable income and tax liability accordingly." Appellee Br. Ex. A, Mot. to Compromise Controversy, Attach., Letter from IRS to Trustee Harris 2, Oct. 13, 2010, ECF No. 8-1.

[7] As the bankruptcy court recognized, the second *Justice Oaks* factor is irrelevant because "collection difficulties for the Trustee are not an issue." *In re Chira*, 567 F.3d at 1313.

[8] To the extent Appellant contends that the bankruptcy court erred in failing to adequately consider the "six books"—a ten inch-thick collection of copied checks, bank statements, deposits, and other documents compiled by Appellant—the Court disagrees. The record reveals that the bankruptcy court admitted the "six books" despite serious concerns regarding their authenticity and relevance. Hearing Tr. 154:18-155:11. And after reviewing the "six books," the Court determined that given their volume and nature, they would add considerably to the length, complexity, and cost of a trial. *Id.* at 198:13-199:18. Therefore, the bankruptcy court appropriately considered the "six books" under the *Justice Oaks* factors.

cooperate in the investigation of his tax liability. *Id.* at 122:3-9, 124:13-15, 127:24-128:3. Therefore, the Court agrees with the bankruptcy court's conclusion that the compromise avoids complex litigation that would cause the bankruptcy estate and its creditors additional expense, delay, and inconvenience. Accordingly, the second *Justice Oaks* factor also supports the bankruptcy court's decision to approve the compromise agreement.

Finally, the bankruptcy court found that the proposed compromise was in the best interest of the creditors.[9] *Id.* at 201:19-202:2. The Trustee estimated that under the compromise, unsecured creditors would receive a distribution of approximately $25,000. *Id.* at 129:3-6; Appellee Br. Ex. A, Mot. to Compromise Controversy ¶ 4, ECF No. 8-1. Alternatively, the Trustee admitted that if the adversary proceeding went to trial, he would be unable to prove some of the deductions that the IRS had allowed under the compromise. Hearing Tr. 126:7-128:19. So proceeding to trial would likely *increase* Debtor's tax liability and therefore *decrease* the distribution to unsecured creditors. And the additional expense associated with litigation would further diminish the distribution to unsecured creditors. *Id.* at 128:3-15. Under these circumstances, the Court agrees with the bankruptcy court's conclusion that the compromise is in the

---

[9] No creditors objected to the motion to compromise. Hearing Tr. 135:15-18.

best interest of the creditors.  Accordingly, the Court finds that the final *Justice Oaks* factor supports the bankruptcy court's decision to approve the compromise agreement.

CONCLUSION

For the foregoing reasons, the Court finds that each of the relevant *Justice Oaks* factors supports the bankruptcy court's approval of the settlement between the Trustee and the IRS resolving Debtor's tax liability for tax years 1994 through 2003.  Therefore, the Court finds that the bankruptcy court did not abuse its discretion in approving the Trustee's motion to compromise.  Accordingly, the Court affirms the bankruptcy court's order approving the Chapter 7 Trustee's Motion to Compromise Controversy.

IT IS SO ORDERED, this 9th day of August, 2011.

                                      S/Clay D. Land
                                              CLAY D. LAND
                                UNITED STATES DISTRICT JUDGE